# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-1984-JAR |
| | ) | |
| AUBURN THIRTY SIX, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff CSX Transportation, Inc.'s Motion for Summary Judgment. (Doc. No. 32) The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**Background**

This action arises from the purchase of scrap rail cars by Defendant Auburn Thirty Six, LLC ("Auburn") from Plaintiff CSX Transportation, Inc. ("CSX"). CSX is an interstate rail carrier providing freight transportation services on behalf of its customers. Auburn is a company in the business of procuring and selling railcar parts and scrap metal. Defendant Michael Goldstein ("Goldstein") is the owner and president of Auburn.

Periodically, CSX sells its railcars for scrap. Generally the railcars are sold through a bid process, but in the event of a derailment, CSX offers to sell the damaged railcars to subcontractors for an agreed upon price. In either case, buyers are offered an opportunity to inspect the railcars and conduct due diligence prior to purchase. After a price has been agreed upon for the railcars, CSX issues a sales order to the buyer. The buyer is responsible for

1

securing, dismantling and removing the purchased railcars from their current location, i.e., a CSX service yard or the site of a derailment.

It is undisputed that between March and September of 2012, Auburn purchased 88 railcars and five containers ("the railcars") which are the subject matter of this litigation.[1] (Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("PSOF"), Doc. No. 33-1, ¶¶ 19, 21, 22; Doc. No. 33-4) All of the railcars were purchased from CSX on credit. (PSOF, ¶ 22) There is also no dispute that all of the railcars were tendered to and accepted by Auburn and that Auburn has failed and/or refused to pay the invoices issued by CSX which total $820,423.64. (PSOF, ¶ 20, 26, 28, 29)

CSX asserts alternate claims for breach of contract (Counts I and III) and unjust enrichment (Count II). In response, Defendants filed a Counterclaim alleging CSX intentionally misrepresented the type and amount of recoverable metals contained in the railcars sold. (Doc. No. 22) CSX moves for summary judgment on Counts I and III of its Amended Complaint as well as on Defendants' Counterclaim.

**Legal Standard**

Under Fed.R.Civ.P. 56, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a

---

[1] The railcars are identified in the following sales orders: ZN2104; ZN2138; ZN2132; ZN2046; ZM2316; ZM2107; and ZN2136. (PSOF ¶ 21)

recovery under any circumstances. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, § 2739 (1983).

**Arguments of the parties**

In support of its motion, CSX argues there is no genuine issue of material fact with respect to its breach of contract claims. CSX maintains that a Scrap Metal Credit Application and Purchase Agreement ("the Agreement"), signed on June 1, 2011 by Goldstein, as president on behalf of Auburn, serves as the parties' contract governing the sale of the railcars. (Mem. In Supp., Doc. No. 33, p. 6) CSX claims it sold railcars to Auburn pursuant to that contract, Auburn failed to pay for the railcars in breach of that contract, and CSX was damaged as a result of that breach.[2] (Mem. In Supp., pp. 6-7) In addition to the Agreement, Goldstein signed a personal guaranty in his individual capacity, agreeing to be personally liable for all scrap charges incurred by Auburn. (Id., pp. 7-8; PSOF, ¶ 32) As a result of Auburn's failure to honor the terms of the Agreement, Goldstein is liable to CSX. His failure to pay is a breach of his obligations under both the Agreement and Guaranty.

With respect to Defendants' counterclaim, CSX contends Auburn cannot establish that CSX made false representations or that Auburn reasonably relied on those representations, if made. (Id., pp. 8-13) Further, Auburn waived its claim by failing to give CSX written notice of any objections or disputes with respect to the sale of railcars pursuant to the Agreement. (Id., pp. 13-14)

---

[2] In addition to the past due charges of $820,423.64, CSX alleges entitlement to contractual attorney's fees in the amount of $123,063.54 pursuant to the payment and collection terms of the Agreement. (Amended Compl., Doc. No. 21, ¶ 21)

3

Defendants respond that CSX is not entitled to summary judgment because it has "failed to address" their affirmative defenses.[3] (Mem. in Opp., Doc. No. 36, p. 3) Defendants also contend that CSX has not established the elements of a contract under Florida's statute of frauds[4] because the Agreement is not signed by the parties and does not identify the items Defendants purchased. Finally, Defendants argue that the Guaranty is limited to $100,000. (Id., pp. 3-4) Defendants do not address CSX's arguments directed to their Counterclaim.

In reply, CSX argues it is not required to negate Defendants' affirmative defenses in order to prevail on summary judgment. (Reply, Doc. No. 37, pp. 3-6) CSX further argues that Defendants waived their statute of frauds argument by failing to plead it as an affirmative defense in their Answer or identify it during discovery. (Id., pp. 6-11) In any case, it is CSX's contention that the parties have in fact complied with the statute of frauds. Finally, CSX asserts the Guaranty does not contain a limitation of liability and expressly guarantees payment for Auburn's account. (Id., pp. 11-13)

**Discussion**

To prevail on a breach of contract claim under Florida law, CSX must establish (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Altman v. Lifespace Communities, Inc., 2012 WL 2287012, at *5 (S.D. Fla. June 18, 2012) (citing Rolins, Inc. v. Butland, 951 So.2d 860, 876 (Fla.Dist.Ct.App. 2006)). There is no dispute that Defendants signed the Agreement and Guaranty, and that the railcars at issue were purchased by Defendants with credit. Defendants admit receiving the railcars at issue and subsequently selling the dismantled parts to scrap metal purchasers such as steel mills and

---

[3] Defendants assert nineteen separate affirmative defenses in their Answer to Amended Complaint, including failure to state a claim, the doctrine of commercial frustration and impossibility, predatory sale practices, and mutual mistake of fact. (Doc. No. 22)

[4] Under the terms of the Agreement, Florida law applies. (Doc. No. 33-7, p. 2)

4

junkyards. (PSOF, ¶¶ 21, 22, 26, 27) Defendants also admit they have failed to pay for the railcars which form the basis of CSX's complaint. (PSOF, ¶ 20)

Defendants argue that CSX has not adduced evidence to overcome any of the affirmative defenses they have asserted. (Mem. in Opp., p. 5) While it is true that a single, triable affirmative defense may preclude summary judgment for CSX on the merits, the flaw in Defendants' argument is their assumption that they may rest on their pleadings in the face of a motion for summary judgment. "[T]he party opposing the summary judgment motion does not have the right to withhold his evidence until trial; nor can he demand a trial because of the speculative possibility that a material issue of fact may appear at that time." Midwest Petroleum Co. v. Am. Petrofina, Inc., 603 F. Supp. 1099, 1109 (E.D. Mo. 1985) (quoting 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil 2d* § 2739 at 521–22 (1983)). Indeed, in some circumstances, a party opposing a motion for summary judgment has a burden of producing evidence. Id. (citing 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil 2d* § 2727 at 143–44). Imposing such a burden on a defendant opposing a motion for summary judgment is particularly appropriate where the issue is one on which the defendant would bear the burden of proof at trial. Id. This burden is not onerous; the nonmoving party "simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. (quoting 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil 2d* § 2727 at 148).

Here, Defendants state that Auburn "has disputed the amount alleged due pursuant to its affirmative defense." (Response to Statement of Facts and Statement of Additional Undisputed Facts, Doc. No. 35, p. 4, ¶ 5) Defendants do not, however, identify the specific defense(s) they rely on or point the Court to where, in the present record, there is evidence to support those

defenses. According to CSX, the only "facts" Defendants provided in support of their affirmative defenses during discovery were limited to their claims of misrepresentation, addressed below. (See Doc. No. 33-8, Response to Interrogatory No. 5) Under these circumstances, the Court finds Defendants have failed to demonstrate that their affirmative defenses present "genuine issue[s] worthy of trial." Id. Accordingly, CSX's failure to specifically address Defendants' affirmative defenses in its motion for summary judgment does not preclude judgment in its favor.

With respect to Defendants' statute of frauds argument, courts have held the failure to plead an affirmative defense to a claim in a responsive pleading waives or forecloses assertion of that defense for the first time later in the litigation, usually finding authority for this conclusion in Fed.R.Civ.P. 8(c), which specifically requires the pleading of affirmative defenses in responsive pleadings. Coop. Fin. Ass'n, Inc. v. Garst, 917 F. Supp. 1356, 1385 (N.D. Iowa 1996) (citing, *inter alia*, Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1266 (8th Cir. 1994) (failure to plead affirmative defense of estoppel to claim for an unpaid account balance waived that defense). However, the Eighth Circuit has allowed assertion of affirmative defenses for the first time in response to a motion for summary judgment when there is no "prejudice" or "surprise" to the nonmoving party. See Financial Timing Publications, Inc. v. Compugraphic Corp., 893 F.2d 936, 944 n. 9 (8th Cir.1990) (holding that an affirmative defense based upon a contractual limitations period may be raised for the first time on summary judgment if no prejudice or surprise is caused to the nonmoving party, because "technical failure to comply with Rule 8(c) is not fatal."). Here, Defendants never asserted the defense of statute of frauds in their answer to CSX's complaint, never identified it in their discovery responses, and raised it for the first time after the close of discovery in its opposition to CSX's motion for summary judgment. For these reasons, the Court finds Defendants have waived their statute of frauds defense.

Even if Defendants had properly raised their statute of frauds defense, CSX has shown that it fails as a matter of law. See State ex rel. Nixon v. Consumer Auto. Res., Inc., 882 S.W.2d 717, 720 (Mo. Ct. App. 1994) (citing ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371 (Mo. 1993)). Fla. Stat. Ann. § 672.201 provides in pertinent part as follows:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought or by his or her authorized agent or broker*. . .
>
> (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
>
> (c) With respect to goods for which payment has been made and accepted *or which have been received and accepted* (s. 672.606).

(Emphasis added.) Under the Florida statute, the Agreement need only be signed by Defendants, i.e., "the party against whom enforcement is sought," in order to be enforceable. Here, Goldstein, Auburn's "authorized agent," signed the Agreement on behalf of Auburn. (Goldstein Depo., Doc. No. 33-3, 59:1-24) Further, the Agreement expressly states that "No notice of Seller's acceptance of this Agreement is required." (Doc. No. 33-7, p. 2) As for the Guaranty, a collateral agreement, only Goldstein's signature was required. See, Boatmen's Bank v. Community Interiors, Inc., 721 S.W.2d 72, 79 (Mo.Ct.App. 1986) ("A guaranty is collateral to and independent of any underlying agreement, and a guarantor's liability is primarily dependent upon the guaranty agreement itself.").

With respect to Defendants' claim that the Agreement does not identify the items purchased, "[a] memorandum of a contract required by the Statute of Frauds . . . may consist of several writings containing evidence therein from which the whole contract may be made out." Bader Bros. Transfer & Storage, Inc. v. Campbell, 299 So.2d 114, 115 (Fla.Dist.Ct.App. 3d Dist.

1974). See also, Rohlfing v. Tomorrow Realty & Auction Co., 528 So.2d 463, 465 (Fla.Dist.Ct.App. 5th Dist. 1988) (written "Real Estate Terms of Sale," together with written "Buyer's Guide" to which "Real Estate Terms of Sale" referred, written "Memorandum of Sale at Public Auction," and buyer's deposit check with notations thereon, were sufficiently definite and certain to establish contract to buy land that complied with statute of frauds). Here, the railcars purchased by Defendants are identified in both the Sales Orders and Invoices. (PSOF, ¶ 21, 28; Doc. Nos. 33-4, 33-6) Moreover, under § 672.201(3), the Agreement is enforceable with respect to goods which have been received and accepted. Defendants admit they both received and accepted the railcars identified in the Sales Orders and Invoices. (Response to Statement of Facts, Doc. No. 35, ¶ 1)

Finally, Defendants assert that the Guaranty is limited to $100,000, referencing a section of the Purchase Agreement regarding the "Credit Limit Desired." It is well established that "[t]he extent of the guarantor's liability depends upon the language of the guaranty itself and is usually equal to that of the principal debtor." Federal Deposit Ins. Corp. v. University Anclote, Inc, 764 F.2d 804, 806 (11th Cir. 1985). The Guaranty expressly provides that Goldstein signed as the guarantor "OF THIS AGREEMENT AND CUSTOMER'S ACCOUNT," thereby linking his obligation to Auburn's account, without limit. (Emphasis in the original.)

Defendants submit there is no evidence that the Guaranty's credit limit was extended, referencing the Agreement's written modification clause, which provides that "any . . . modification or change must be in writing and signed by SELLER and CUSTOMER." (Emphasis in the original) (Doc. No. 33-7, p. 3) CSX responds that to the extent this is even relevant to the purchases at issue, under Florida law it is possible for a subsequent modification to result from the conduct of the parties. (Doc. No. 37, p. 13 n. 15) See Pan Am. Eng'g Co. v.

Poncho's Constr. Co., 387 So.2d 1052, 1053 (Fla. Dist.Ct.App.5th Dist. 1980). See also Fletcher v. Laguna Vista Corp., 275 So.2d 579 (Fla.1st Dist.Ct.App. 1973), where a general contractor was awarded his increased costs following completion of an apartment complex. The property owner argued that the total sum payable to the contractor was pursuant to a written contract and could not be increased without written consent. The contractor had presented the owner with two change orders based on increased overhead costs but the owner had refused to sign the orders. The court affirmed an award to the contractor, given the way in which the parties had interpreted the contract through their course of dealings. The court found the owner was aware of some increase in overhead and never objected. In addition, the owner had previously accepted one change order not signed in accordance with the contract. As a result, the court held the parties had modified the contract by their course of dealings. Here, Goldstein testified on deposition that he proceeded with the railcar purchases despite his awareness that he was exceeding the $100,000 credit limit.[5] Further, there is no evidence of record that Defendants protested the sales or otherwise revoked the Guaranty.

**Counterclaim for fraudulent misrepresentation**

---

[5] Q. So you were aware at the time you were making the purchases that it was above the credit limit, that you would be exceeding the credit limit?
A. Yes.

Q. But you felt that you could make money off of these purchases--
A. Yes.

Q. -- so you proceeded with the purchases?
A. I was allowed to.

Q. But you did, correct?
A. Yes, I was allowed to.

(Goldstein Depo., 75:24-76:13)

Defendants' counterclaim for fraudulent misrepresentation fails as a matter of law because they cannot establish that CSX misrepresented the amount of recoverable metals contained in the railcars sold. Even if Defendants could establish such misrepresentations, they cannot establish reliance thereon. The representations were allegedly made by CSX employee Len Whitehead to former Auburn employee John Fisher, regarding railcars involved in a West Virginia derailment. However, it is undisputed that both Whitehead and Fisher denied that Whitehead, or any other CSX employee, made any statements to Fisher or any other person employed by Auburn regarding the amount of recoverable metal contained in any railcars CSX sold to Auburn. (PSOF, ¶ 36)[6]

Auburn also claims CSX made misrepresentations regarding other railcars based on certain "specs" contained in the Universal Machine Language Equipment Register ("UMLER"), an online system that provides shippers and rail carriers with information pertain to railcars such as height, weight and maximum load capacity. (PSOF, ¶ 43) It is undisputed, however, that UMLER does not provide any information regarding the amount of recoverable metals contained in a railcar and that CSX did not provide the information contained in UMLER to Auburn as part of any sales of railcars for dismantling. (PSOF, ¶¶ 45, 46) In fact, Goldstein testified on deposition that Auburn would search UMLER readouts on its own. (Goldstein depo., 32:24-33:7)

---

[6] In response to CSX's statement of facts, Defendants move to strike the deposition transcripts of Michael Goldstein and John Fisher because the exhibits referenced therein were not attached. (Doc. No. 35, ¶ 8) CSX responds that most of these exhibits are cumulative of what was already filed, and Defendants do not cite any legal support for this request or identify why any missing exhibits are relevant. Furthermore, Federal Civil Rule 32 provides that "all *or part* of a deposition" may be used against a party. Fed. R. Civ. P. 32. (Reply, Doc. No. 37, p. 2 n1) Motions to strike are not favored and infrequently granted, because they propose a drastic remedy. Stanbury Law Firm, P.A. v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir.2000). Moreover, motions to strike are properly directed only to material contained in pleadings. Fed.R.Civ.P. 12(f) (a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Because Plaintiff's motions are not directed to pleadings, the Court will not consider them. See Stockdale v. Stockdale, 2010 WL 1329593, at *1 (E.D.Mo. Apr. 6, 2010).

In terms of reliance, the Agreement, bid invitations, and sales orders all specify that railcars are sold "as is, where is." (PSOF, ¶ 49) Auburn acknowledged that it inspected some of the railcars involved in the West Virginia derailment, as well as other locations, but claims to be unable to identify which cars it did or did not inspect. (PSOF, ¶ 40; Responses to First Set of Interrogatories, Doc. No. 33-8, interrogatory no. 14) Defendants also claim to have paid more than the fair market value of the railcars as a result of the alleged misrepresentations, but fail to provide a computation of their damages. (PSOF, ¶¶ 50-52)

Finally, Defendants failed to comply with the notice provisions of the Agreement by submitting written notice to CSX of any disputes arising from the sale of any railcars. Section 2 provides in pertinent part that ALL CLAIMS, DISPUTES OR OBJECTIONS ARE WAIVED UNLESS CUSTOMER GIVES SELLER NOTICE IN WRITING WITHIN FIFTEEN DAYS OF DELIVERY. (Doc. No. 33-7) Section 4 provides that "[a]ll goods sold and delivered are conclusively deemed to be the goods ordered by CUSTOMER for the price specified therein and delivered in good order unless written notice to the contrary is received by the SELLER from the customer within fifteen days of delivery and if no notice is given all objections are waived." (Id.) There is no evidence of record demonstrating that Defendants provided written notice of any objections or disputes regarding the sale of railcars pursuant to the Agreement.

Because Defendants have not addressed their counterclaim in their opposition to CSX's motion, the Court finds Defendants have abandoned it. See Union Pac. R. Co. v. Beemac Trucking, LLC, 929 F. Supp. 2d 904, 917 n.10 (D. Neb. 2013) (to the extent that shipper, a railroad company, sought recovery for damage to its train when goods which were to be delivered to shipper's rail yard were involved in collision with the train, such argument was abandoned based on shipper's failure to address it in its own motion for summary judgment, or in

response to defendants' cross-motion for summary judgment); United States v. NHC Health Care Corp., 163 F.Supp.2d 1051, 1058-59 (W.D.Mo.2001) (court assumed plaintiff abandoned claims not addressed in opposition to defendant's motion for summary judgment). Even if the counterclaim was not abandoned, the Court concludes it would fail on the merits, as discussed above.

**Conclusion**

For the foregoing reasons, the Court concludes that CSX is entitled to summary judgment on its breach of contract claims. The Court's grant of summary judgment on these claims moots CSX's claim for unjust enrichment, pled in the alternative to breach of contract. See Monarch Fire Protection Dist. of St. Louis County, Missouri v. Freedom Consulting & Auditing Services, Inc., 678 F.Supp.2d 927, 938 (E.D. Mo. 2009). The Court further concludes that Defendants have abandoned their counterclaim for intentional misrepresentation and said counterclaim will be dismissed. NHC Health Care, 163 F.Supp.2d at 1059.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff CSX Transportation, Inc.'s Motion for Summary Judgment [32] is **GRANTED.** Judgment on Counts I and III of Plaintiff's Amended Complaint is entered in favor of Plaintiff CSX Transportation, Inc. and against Defendants Auburn Thirty Six LLC, and Michael Goldstein.

**IT IS FURTHER ORDERED** that Plaintiff CSX Transportation, Inc. is awarded damages in the principal amount of $820,423.64.

**IT IS FURTHER ORDERED** that Plaintiff CSX Transportation, Inc. is granted seven (7) days from the date of this Memorandum and Order to supplement its briefing on the issue of

attorney's fees and costs. Defendants Auburn Thirty Six LLC, and Michael Goldstein are granted seven (7) to reply.

**IT IS FURTHER ORDERED** that Defendants' counterclaim is **DISMISSED**.

A separate Judgment will accompany this Memorandum and Order.


Dated this _3rd___ day of June, 2014.

                                                                          _____
                                                                          JOHN A. ROSS
                                                                          UNITED STATES DISTRICT JUDGE